# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

RAYMOND CARTER, JR.,

    Plaintiff,

VS.

                      **7 : 12-CV-76 (HL)**

Deputy JOHN MARION, *et al.*,

    Defendants.

## RECOMMENDATION

The Plaintiff filed this action in June 2012, raising claims of excessive force during a November 2011 arrest. (Doc. 1). Presently pending herein are motions for summary judgment filed on behalf of the Defendants. (Docs. 22, 29). The Court notified the Plaintiff of the filing of the Defendants= motions, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Docs. 28, 32).

### Background

Plaintiff was arrested on charges of selling Methamphetamine by the Defendant law enforcement officers on November 9, 2011 in Echols County, Georgia. Plaintiff was arrested pursuant to an arrest warrant. At the time of the arrest, Defendant Glassner was a deputy with the Lowndes County Sheriff's Office, Defendants Englemann and Marion were deputies with the Echols County Sheriff's Office, and Defendant Grundy was an officer with the Lake Park City Police Department. According to the Plaintiff's original, supplemental, and amended Complaints, he was working on the duct work underneath a house when the Defendants arrived, accompanied by two (2) dogs that were assigned to K-9 units. Plaintiff maintains that the

Defendants told him to come out from under the house, and that he immediately began to move towards the opening of the underskirting at the back of the house where the officers were positioned. When he was six (6) feet from the opening, the Plaintiff stopped and told the officers he was coming out. Plaintiff asked the officers to call off the dogs, who were barking aggressively, so that the Plaintiff could exit the area under the house as requested by the Defendants.

Plaintiff asserts that Defendant Glassner released the first dog when Plaintiff was five (5) feet from the opening, and that the dog attacked the Plaintiff on his upper body and caused multiple lacerations and damage to his shoulder. Plaintiff maintains that after he was out from under the house, lying on his stomach with his hands in front of him, Defendant Marion released the second dog. The Plaintiff claims that at no time after the Defendants ordered him to exit the area under the house did he resist or attempt to elude their efforts to arrest him. The Plaintiff maintains that the Defendants stood by and watched the dogs attack the Plaintiff, without heeding his calls that the dogs be called off. Plaintiff maintains that the dogs were allowed to attack him after he was handcuffed, causing severe injuries to his shoulder.

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@ Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or

>       presence of a genuine dispute, or that an adverse party cannot
>       produce admissible evidence to support the fact.

   Fed.R.Civ.P. 56(c)(1).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it" Fed.R.Civ.P. 56(e)(3).

   The Defendants assert that they are entitled to qualified immunity, and that the force used in arresting the Plaintiff was objectively reasonable. In response to the Defendants' motions for summary judgment, the Plaintiff has submitted his signed statements, as well as supporting documentation. (Docs. 34, 36, 42). Plaintiff's statements are not notarized and were not made in accordance with 28 U.S.C. § 1746. Defendant Grundy has submitted the Plaintiff's sworn deposition testimony and said deposition is part of the record herein. (Doc. 26). In reviewing the Defendants' motions for summary judgment, the Court views the facts and reasonable inferences therefrom in the light most favorable to the Plaintiff. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).

   Qualified immunity "offers complete protection for government officials sued in their

3

individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009). "Under the qualified immunity standard recently rearticulated by the Supreme Court in *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we are obliged to grant qualified immunity to a [defendant] officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Id.* at 905.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 107 S. Ct. 3043 (1987)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . Accordingly, . . . the salient question . . . is whether the state of the law [at the time of the events giving rise to the cause of action] gave [the defendants] fair warning that their [actions were] unconstitutional." *Id.* at 741.

In analyzing the Plaintiff's claims of excessive force, the Court "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . [A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).[1] "The question to be decided is whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2000). Application of the reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d at 1198.

The Eleventh Circuit has recognized that an officer may use some degree of force in effectuating an arrest. *Durruhy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Moreover, "[i]t is well established in [the Eleventh Circuit] that where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Williams v. Sirmons*, 307 Fed.Appx. 354, 360 (11th Cir. 2009). "[T]he

---

[1] "Upon conviction, the source of the protection against deliberate force which is excessive and unjustified is the Eighth Amendment." *Id.*

typical arrest involves some force and injury.@ *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).

In cases involving canines as a use of force to effect arrest, the Eleventh Circuit has recognized that the use of a canine is measured as are all other uses of force, judging the need for the use of force from the facts known to the defendant officers on the scene at the time of the arrest. *Priester v. City of Riviera Beach, Florida*, 208 F.3d 919, 924 (11th Cir. 2000). Depending on the facts, "[t]wo minutes [of a dog attack may be] long enough for a reasonable jury to conclude that [the officer] had time to intervene and to order [the dog handler] to restrain the dog." *Id.* at 925. In a situation in which the suspect is thought to have committed serious crimes, flees or otherwise attempts to thwart arrest, and can reasonably be believed to be armed and dangerous, the use of a canine to locate and apprehend the suspect may be found to be objectively reasonable. *Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009).

### *Defendants Glassner, Englemann, and Marion*

Defendants Glassner, Englemann, and Marion have supported their Motion for Summary Judgment with their affidavits, certain pieces of documentary evidence concerning the Plaintiff's medical treatment and criminal history, and the pleadings herein. (Docs. 29-31).

Officers Glassner, Englemann, and Marion testify by means of affidavits that Defendants Marion, with a K-9 partner, and Englemann executed an arrest warrant for the Plaintiff at a Lake Park, Georgia address on November 9, 2011. (Docs. 29-1, 29-2, 29-3). Prior to this date, Plaintiff was known to the Defendants as a person engaged in the illegal manufacture and sale of methamphetamine. (Doc. 29-1, ¶ 6; Doc. 29-2, ¶ 5; Doc. 29-3, ¶ 5). Initially unable to locate the Plaintiff at the Lake Park address, Defendants Englemann and Marion, later joined by Defendant Grundy, called for the assistance of Defendant Glassner and his K-9 partner.

The Plaintiff was located underneath the mobile home after an extensive search of the surrounding property, and was ordered by the Defendants to show his hands and come out from under the home.  (Doc. 29-1, ¶¶ 17, 18; Doc. 29-2, ¶¶ 15, 16; Doc. 29-3, ¶¶ 7, 8).  Plaintiff refused the officers' repeated commands, and due to his failure to show his hands and exit the underneath of the home, the Defendants could not tell if Plaintiff was armed.  (Doc. 29-1, ¶¶ 18, 19; Doc. 29-2, ¶¶ 17, 18; Doc. 29-3, ¶ 10).  The Defendants believed that the Plaintiff at one point had turned around and was headed out the other side of the underskirting.  (Doc. 29-1, ¶ 20; Doc. 29-2, ¶ 19; Doc. 29-3, ¶ 11 ).  Defendant Glassner then released his canine to apprehend the Plaintiff.  (Doc. 29-3, ¶ 13).

According to the Plaintiff's deposition testimony and the allegations set forth in his Complaints, Plaintiff began moving towards the exit point when the Defendants ordered him to come out from underneath the house, and only stopped moving towards the opening when he saw and heard the dogs.  (Doc. 26, pp. 51-52, 54-58, 64).  Plaintiff asked the Defendants to move the dogs, but the first canine was released, biting the Plaintiff about the neck and shoulder.  *Id.* at 65-67.  Plaintiff maintains that the dog continued to attack him after Plaintiff was out from underneath the house, lying face down on the ground with his hands above his head, while the Defendants watched, and that the Defendants then released the second canine.  *Id.* at 69, 74-77.

**First canine: release**

Given the facts as set out by the Plaintiff and facing the Defendants at the time of Plaintiff's arrest, the force allegedly used in releasing the first canine cannot be said to have been unreasonable when analyzed under *Graham* and its progeny.  The Court notes that the Plaintiff's arrest was pursuant to an arrest warrant, which establishes that Plaintiff's November 9, 2011 arrest was based on probable cause.  (Doc. 27-1); s*ee Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir.

7

2000) (arrests supported by probable cause distinguished from arrests without probable cause, in which any use of force is inappropriate); *Williams*, 307 Fed.Appx. at 354 (probable cause in making arrest allowed for use of some force). Plaintiff does not dispute the presence of a valid arrest warrant for his November 9, 2011 arrest.

As set out by the Plaintiff in his Complaints and deposition testimony, Plaintiff was underneath a doublewide trailer working on ductwork when the Defendant officers approached with two dogs. (Doc. 26, pp. 33, 51- 64). Plaintiff admits that although he initially began moving toward the exit hole, he stopped when he saw and heard the dogs at the exit point, at least five (5) feet away from the opening. *Id.* at 65, 70. When the Plaintiff stopped, the officers were still holding the dogs. *Id.* at pp. 65, 70. Plaintiff maintains that he asked the Defendant officers to move or call off the dogs so that he could exit, but that Defendant Glassner released the first dog underneath the structure instead. *Id*. at 66-67. Plaintiff admits that he fought with the dog and placed his hand over the dog's muzzle at some point as he exited the area underneath the house. *Id.* at 53-54, 72.

Looking at the *Graham* factors, in regard to the severity of the Plaintiff's crime, the Defendants were seeking the Plaintiff based on charges of selling Methamphetamine, a serious felony for which the Plaintiff was ultimately convicted. *Lee*, 284 F.3d at 1198 ("*Graham* establishes generally that more force is more appropriate for a more serious offense"); *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1221(11th Cir. 1993) (noting that "[d]rug dealing is known to be extremely violent"); *United States v. Marszalkowski*, 669 F.2d 655, 665 (11th Cir. 1982) (noting that "drug dealers are likely to be armed and dangerous").

In regard to the perceived immediacy of the Plaintiff's threat to the safety of the officers, in addition to the Plaintiff's status as a drug dealer likely to be armed and dangerous, the Defendants

were also faced with these facts: a thirty (30) minute search for the Plaintiff, at a property where a vehicle belonging to the Plaintiff was parked and Plaintiff's girlfriend confirmed Plaintiff's recent presence, and Plaintiff ultimately located underneath the trailer. Under these circumstances, undisputed by the Plaintiff, it was reasonable for the Defendants to believe that the Plaintiff had been hiding from them and posed a threat to their safety. *Crenshaw*, 556 F.3d at 1292 (suspect's attempt to hide from authorities in densely wooded area presented officers with increased threat to their safety and suspect's risk of flight); *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988) (use of police dog was reasonable in apprehending suspect believed to be hiding from police inside a building). Defendants' affidavit testimony, supported by Plaintiff's deposition testimony, also reveals that the Defendants did not have a clear view of the Plaintiff while Plaintiff was under the house, and could not confirm whether Plaintiff was armed, either when Plaintiff initially began to move towards the exit or when he stopped five (5) feet back. The Defendant officers "justifiably feared that [Plaintiff] might be armed." *Mongeau v. Jacksonville Sheriff's Office, et al.*, 197 Fed.Appx. 847, 850 (11th Cir. 2006); *Crenshaw*, 556 F.3d at 1292 (use of canine to locate and apprehend suspect was reasonable, as suspect was suspected of serious crime, had actively fled and hid from police, and reasonably believed to be armed and dangerous).

In regard to risk of flight, although Plaintiff maintains that at no time during his arrest did he resist the Defendants' efforts to have him come out from under the house and be handcuffed, he admits that he stopped moving towards the exit five (5) feet from the opening when blocked by the dogs. *Id.* at 66, 70-71. On similar facts, the Eleventh Circuit held that "the use of [a] canine was objectively reasonable because [the arrestee] admitted that he responded slowly to the officers' orders to show his hands and failed to keep his hands raised." *Mongeau*, 197 Fed.Appx. at 851. Moreover, the Plaintiff admits in his deposition testimony that there were other open areas of the

9

skirting from which one could escape from underneath the house, and the Defendant officers believed that the Plaintiff at one point had tried to escape from another area. (Doc. 26, pp. 33, 35; Doc. 27, ¶ 17; Doc. 29-1, ¶ 20; Doc. 29-2, ¶ 19; Doc. 29-3, ¶ 11). "The totality of [these] circumstances . . . establish[es] that the conduct of the officers . . . was not excessive." *Mongeau*, 197 Fed.Appx. at 851. "Furthermore, because the evidence shows that [the Plaintiff] had not yet [fully] . . . surrender[ed] when [the first dog was released], this is the sort of 'split-second' determination made by an officer on the scene that *Graham* counsels against second guessing." *Edwards v. Shanley*, 666 F.3d 1289, 1295 (11th Cir. 2012).

**First canine: continued attack**

Plaintiff maintains that the attack by the first canine continued for a period of time, perhaps more than a minute after he was out from underneath the house. (Doc. 26, p. 53, 54). After Plaintiff and the first canine "wrestled our way out from under the house", the Plaintiff was handcuffed and the second canine was "nipping" at Plaintiff's hair. *Id.* at p.54. "All the people were right there at the [exit] hole". *Id.* at p. 55. The first canine was still biting the Plaintiff after he emerged from underneath the house. *Id.* at p. 75.

Once the Plaintiff was out from underneath the house, Plaintiff maintains that he was compliant with the Defendant officers, lying face down, arms above his head, and posing no threat of bodily harm to the officers or others. Plaintiff maintains that he was not attempting to flee and was asking the officers for help and to call off the canine. (Doc. 26, p. 77). Plaintiff also testifies that the attack by the first canine was allowed to continue after Plaintiff was handcuffed. *Id.* at pp. 76, 77. Under this set of circumstances, "[n]o reasonable police officer could believe that this [continued use of] force was permissible given these straightforward circumstances." *Priester*, 208 F.3d at 927; *see Edwards*, 666 F.3d at 1295 (while initial decision to use dog to track and

subdue fleeing suspect was constitutional, officer used unconstitutional excessive force when he permitted dog to attack for prolonged period); *Trammell v. Thomason*, 335 Fed.Appx. 835, 843 (11th Cir. 2009) (continued dog attack, lasting for a "significant period of time", violated Plaintiff's rights). "Despite the fact that [the Plaintiff] has been unable to put a precise time frame on the attack, his testimony . . . is sufficient to raise the factual possibility that the attack continued for some significant length of time." *Id.* at 844. "[The summary judgment] standard [of construing the record in the light most favorable to the non-moving party] leaves no room to dispute the length of the dog attack, because the officers say almost nothing about the attack's duration." *Edwards*, 666 F.3d at n.2.

> That [the officer] reasonably decided to use the dog in the first instance does not mean, however, that the use of the dog was reasonable for the duration of the attack. Rather, the *Graham* factors compel the conclusion that [the officer] used unreasonable force when he subjected [the Plaintiff] to five to seven minutes of dog attack, while [the Plaintiff] was pleading to surrender and [the officer] was in a position to immediately effect [the Plaintiff's] arrest. . . [Any continued danger of flight was mitigated] by [the Plaintiff] laying prone with his hands exposed and begging to surrender. . . .
>
> . . . Because [the plaintiff] was begging to surrender, and because [the officer] could safely give effect to that surrender, the further infliction of pain was gratuitous and sadistic. This the Constitution does not tolerate.

*Id.* at 1296.

Nor are Defendants entitled to qualified immunity as to the continued attack of the first canine, as Plaintiff's right to be free from the force used by the first canine in its continued attack was clearly established at the time of Plaintiff's 2011 arrest. *See Priester*, 208 F.3d at 926. The Court finds that under the Eleventh Circuit's Fourth Amendment excessive force standard, as discussed herein, an officer in Defendants' positions would conclude that the force applied in the

continued attack by the first canine was unlawful. Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's claim that Defendants Glassner, Englemann, and Marion allowed a continued attack by the first canine.

**Second canine**

Plaintiff maintains that the second dog was released after the Plaintiff had exited the area underneath the house and while Plaintiff remained prostrate and handcuffed on the ground. Although the force allegedly used by Defendants in releasing the second canine might have been unnecessary, the force itself was no more than de minimis. Plaintiff states in his deposition testimony that the second canine merely nipped at his hair and did not cause any physical damage to the Plaintiff. (Doc. 26, pp. 54, 77-78). "[T]his Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin*, 207 F.3d at 1255. Plaintiff does not provide any detail or evidence of injury inflicted by the second canine beyond an allegation of "nipping" at his hair. (Doc. 26, p. 77); *Williams*, 307 Fed.Appx. at 361 ("[Plaintiff] presents no evidence that she was injured as a result of the force; accordingly, we must characterize the use of force as de minimis.").

Thus, in regard to the second canine, the Court has before it no evidence of greater than de minimis force or injury, which will not support a claim of excessive force under the Fourth Amendment. *See Nolin*, 207 F.3d at 1255 (finding de minimis force where an officer "grabbed [the suspect] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"; *Sullivan v. City of Pembroke Pines*, 161 Fed.Appx. 906 (11th Cir. 2006) (grabbing suspect by the arm, pulling her arms behind her back,

forcing her to the ground, placing a knee on her back was de minimis amount of force in effectuating a valid arrest).

The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.   Under Plaintiff's version of the facts, no reasonable juror could conclude that the force used in releasing the second canine was unreasonable, based on the de minimis nature of the force and any resulting injury, the Plaintiff's initial resistance to the control of the arresting officers and first canine, and the severity of the Plaintiff's crimes.

*Defendant Grundy*

Defendant Grundy has supported his Motion for Summary Judgment with the pleadings on file, his affidavit, and Plaintiff's deposition testimony.   (Docs. 22-27).   The Plaintiff asserts that Defendant Grundy violated his right to be free from the excessive use of force in failing to intervene in the release and use of the first and second canines.   "[A]n officer can be liable for failing to intervene when another officer uses excessive force. . . This liability, however, only arises when the officer is in a position to intervene and fails to do so."   *Priester*, 208 F.3d at 924 (*internal citations omitted).*

In his affidavit testimony, Defendant Grundy states that he responded to 911 radio transmissions regarding Defendants Englemann and Marion's attempts to serve an arrest warrant for the Plaintiff at a Lake Park mobile home, and arrived at the scene to provide backup assistance in the arrest.   (Doc. 27, ¶¶ 6-8).   Grundy was told that the officers believed that the Plaintiff had fled the area on foot, and that they were waiting on the arrival of Defendant Glassner and his canine partner, who had experience in tracking suspects.   *Id.* at ¶¶ 10, 11.   After noticing a gap in

the skirting of the mobile home, Grundy leaned down and located the Plaintiff underneath the house. Grundy told the Plaintiff to "show his hands". The other officers approached, and Grundy moved away from the opening in the skirting. *Id.* at ¶ 16. When another officer stated that the Plaintiff was going to the other side of the mobile home, Grundy "ran to the front of the Mobile Home to prevent Carter from escaping in that direction." *Id.* at ¶ 17. Grundy waited at the front of the home, and the Plaintiff was handcuffed on the ground when Grundy returned to the back of the house. *Id.* Grundy states that "[a]t no time did I witness a dog biting or attacking Carter." *Id.* at ¶ 18.

**First canine: release**

In his original, supplemental, and amended Complaints, the Plaintiff does not provide details as to Defendant Grundy's specific location during the canine attacks, but states that "Deputy Grundy and Officer Englemann cheered the dogs on while they continued to attack the Plaintiff", and concludes that Grundy allowed the canine attacks to happen. (Docs. 6, 7). In his deposition testimony, the Plaintiff states that he could only see through the skirting on the mobile home at certain places and initially could only see "a dog and some legs" (Doc. 26, at 40, 48). Although Plaintiff was "almost certain Bobby Grundy was the one that – they took and handcuffed me and then the other dog – the dogs were still there", Plaintiff repeatedly testifies that his view from underneath the house was blocked, and that only the officers kneeling down could have seen Plaintiff while he remained underneath the house. *Id.* at 54, 59. Ultimately, the Plaintiff admitted that he was uncertain as to Defendant Grundy's whereabouts when the first canine was released.

> Q   It's fair to say you don't know exactly where Grundy was?
>
> A   I can't totally see Grundy from where I'm at –

14

>Q   Now, when you –
>
>A   --but I can see the rest of them, and he's sitting there looking at me, and Marion is –
>
>Q   When you're saying "he's sitting there looking at me," you're talking about Englemann?
>
>A   Englemann.

*Id.* at 64-65.

Plaintiff has not overcome Grundy's summary judgment showing that Grundy was not in a position to intervene in the release of the first canine, as Plaintiff's testimony establishes that Plaintiff was uncertain as to Grundy's whereabouts at the time the first canine was released. Accordingly, Plaintiff has failed to overcome Defendant Grundy's summary judgment showing that Grundy was not in a position to intervene in the release of the first canine.

**First canine: continued attack**

As with Defendants Glassner, Englemann, and Marion, the evidence before the Court shows that Defendant Grundy was present when the Plaintiff was the subject of a continued attack by the first canine. Plaintiff's deposition testimony places Defendant Grundy with the other Defendants, observing the continued attack by the first canine, when Plaintiff was out from underneath the house, lying face down on the ground, handcuffed, and asking for help and for the first dog to be called off. (Doc. 26, pp. 64, 75, 77). "[B]ecause [Grundy] stood . . . on the scene and watched the entire event and was in voice contact with [the other officers], this case is distinguishable from those cases where an officer who failed to intervene was found not liable because he did not observe the violation or have the opportunity to intervene." *Priester*, 208 F.3d at 925. The evidence of record, viewed in a light most favorable to the Plaintiff, shows that Defendant Grundy observed the alleged excessive use of force by means of the first canine and that he had the

opportunity to intervene in the continued attack by the first canine.

Defendant Grundy is not entitled to qualified immunity as to the continued attack of the first canine, as Plaintiff's right to be free from the force used by the first canine in its continued attack was clearly established at the time of Plaintiff's 2011 arrest. *See Priester*, 208 F.3d at 927 ("That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994."). Under the Eleventh Circuit's Fourth Amendment excessive force standard, as discussed herein, "no reasonable officer would believe that either the amount of force used in these circumstances [of the continued attack] or the failure to intervene was objectively reasonable." *Id.* at 928. Accordingly, Defendant Grundy is not entitled to qualified immunity on Plaintiff's claim that he failed to intervene in a continued attack by the first canine.

**Second canine**

Although Plaintiff's testimony places Grundy at the scene when the second dog was released, the Plaintiff admits that this dog did no physical damage and only nipped at his hair. *Id.* at 78. Plaintiff has not established that the second canine exhibited more than a de minimis use of force, thereby providing no excessive use of force in which Defendant Grundy could have intervened. *Mongeau*, 197 Fed.Appx. at 851 (as release of dog was reasonable, failure to intervene to prevent use of the dog was also reasonable); *see also Williams*, 307 Fed.Appx. at 361 ("[The Plaintiff] presents no evidence that she was injured as a result of the force; accordingly, we must characterize the use of force as de minimis."). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

The evidence of record, viewed in a light most favorable to the Plaintiff, does not show that

16

Defendant Grundy observed an excessive use of force by means of the second canine or that he had the opportunity to intervene in the release of the first canine. *Ensley v. Soper*, 142 F.3d 1402, 1408 (11th Cir. 1998) (lack of evidence that officer either observed excessive force or had opportunity to intervene; officer entitled to summary judgment on failure to intervene claim).

## Conclusion

Accordingly, it is the recommendation of the undersigned that the Defendants=Motions for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**. It is recommended that all Defendants' motions for summary judgment be **GRANTED** in regard to Plaintiff's claims that the release of the first canine and the release and use of the second canine violated his right to be free from excessive force during arrest. It is recommended that all Defendants' motions for summary judgment be **DENIED** as to Plaintiff's claims that the continued attack by the first canine violated the prohibition against excessive force. Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 19th day of July, 2013.

                                                    s/ ***THOMAS Q. LANGSTAFF***
                                                    **UNITED STATES MAGISTRATE JUDGE**

asb