**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**RAYMOND CARTER JR.,**

Plaintiff,

v.

**JOHN MARION, BOBBY GRUNDY, TIMOTHY GLASSNER, and ROBERT ENGLEMANN[1],**

Defendants.

Civil Action No. 7:12-CV-76 (HL)

**ORDER**

This case is before the Court on a Recommendation from United States Magistrate Judge Thomas Q. Langstaff (Doc. 44) in which he recommends that Defendant Grundy's Motion for Summary Judgment (Doc. 22) and Defendants Marion, Glassner, and Englemann's Motion for Summary Judgment (Doc. 29) be granted in part and denied in part. Defendants have filed an objection to the Recommendation.[2] The Court has made a *de novo* review of the Recommendation and finds as follows.

[1] The Clerk of Court is directed to update the docket to reflect the proper name of Defendant Glassner.

[2] While Plaintiff was given an extension of time until September 6, 2013 to file objections to the Recommendation, he did not file any.

The facts viewed in the light most favorable to Plaintiff, taken mainly from his deposition, are as follows. The incident in question occurred on November 9, 2011. Plaintiff was working underneath a mobile home owned by Andrea Wilkes Corbett in Lake Park, Georgia. (Deposition of Raymond Carter Jr., p. 33). The mobile home had partial skirting around it that ran from the bottom of the mobile home to the ground. (Id.) There were several openings in the skirting on each side of the mobile home where the skirting was damaged or missing. (Id.) There was also another opening in the skirting referred to by Plaintiff as a scuttle hole. The scuttle hole was located at the rear of Ms. Corbett's home and was between six and ten feet long. (Id. at 38-39).

Plaintiff started working under Ms. Corbett's home around 10:00 a.m. on November 9. (Id. at 46). Around lunch time, the defendant police officers arrived at Ms. Corbett's home to execute an arrest warrant for Plaintiff for the manufacture and sale of methamphetamine. (Id. at 47; Affidavit of John Marion, ¶¶ 5-6). Plaintiff was still under the mobile home. (Id.) Plaintiff did not know it was law enforcement officers who had arrived, as all "I seen was a dog and some legs, but, I mean, I had no idea or no reason to think that it would be police officers." (Id. at 48).

A person standing in Ms. Corbett's yard could not see through the skirting and see underneath her home. (Id. at 38). One would have to look through one of the open or damaged areas to see underneath. (Id.) Plaintiff was first discovered under the mobile home by Defendant Englemann. (Id. at 51, 56). Defendant

Englemann shouted to the other officers and the officers all walked over to the scuttle hole. (Id. at 51-52). Plaintiff asked Defendant Englemann why the officers were there. (Id. at 52). Plaintiff was about 20 feet away from the opening. (Id. at 51). Plaintiff could see Defendant Englemann kneeling down at the scuttle hole and Defendant Glassner's canine partner, which was still on a leash at this time. (Id. at 60-61). Defendant Marion and his leashed canine partner were standing about 40 feet back from the opening. (Id. at 62-63).

Plaintiff immediately began crawling toward the opening on his hands and knees. (Id. at 57-58). He stopped about six feet away from the scuttle hole because of the dogs. (Id. at 72). At this time both dogs were at the opening. (Id. at 66). Plaintiff asked Defendant Englemann to hold the dogs, both of which were still leashed. (Id. at 64-65, 70).

After Plaintiff stopped crawling towards the opening, Defendant Englemann told Defendant Glassner to release his dog, and Defendant Glassner did so. (Id. at 66, 69). Defendant Glassner's dog went underneath the mobile home and bit Plaintiff on the neck and side. (Id. at 67). Plaintiff was face down under the mobile home and used his right arm to try and protect himself from Defendant Glassner's dog. (Id. at 67-68). Plaintiff was able to continue crawling out from under the mobile home even though Defendant Glassner's dog was biting him. (Id. at 72, 74). When Plaintiff was partially out from under the mobile home, Defendant Glassner's dog bit Plaintiff on the head, arm, and shoulder. (Id. at 69, 75). At that point, Plaintiff grabbed Defendant Glassner's dog's snout and

held onto it so the dog could not bite anymore. (Id. at 75). Plaintiff testified that he and Defendant Glassner's dog "wrestled [their] way out from under the house" (Id. at 54), and that he was "fighting this dog." (Id. at 75).

Once Plaintiff was out from under the mobile home, Defendant Grundy pulled Plaintiff's hands off Defendant Glassner's dog and handcuffed Plaintiff. (Id. at 76). Plaintiff thinks Defendant Glassner's dog bit him once after he was put in handcuffs. (Id. at 77). Plaintiff was still face down and was "beg[ging] them for help to get this dog off of me." (Id. at 77). Defendant Marion's canine was then released, but he did not attack or bite Plaintiff. He merely nipped at Plaintiff's hair for 30 seconds to one minute. (Id. at 54.)

Plaintiff contends that Defendants Englemann, Glassner, and Marion's release and use of the canines to affect his arrest constituted excessive force in violation of his Fourth Amendment rights. Plaintiff further contends that Defendant Grundy violated his constitutional rights by failing to intervene in the release and use of the canines. All Defendants filed motions for summary judgment. Defendants argued that the force used in arresting Plaintiff was objectively reasonable and that they are entitled to qualified immunity. Defendant Grundy also argued that he could not be held liable for the release of Defendant Glassner's canine because he was not in a position to intervene.

In his Recommendation, the Magistrate Judge divided his analysis into three parts: (1) the release of Defendant Glassner's canine; (2) the continued attack of Plaintiff by Defendant Glassner's canine after Plaintiff was out from

underneath the mobile home; and (3) the release of Defendant Marion's canine. The Magistrate Judge recommended that summary judgment be granted in Defendants' favor with respect to the release of Defendant Glassner's canine and with respect to the release of Defendant Marion's canine. He recommended that summary judgment be denied with respect to the continued attack of Defendant Glassner's canine, finding that based on the circumstances, the continued use of force was unconstitutional. The Magistrate Judge further found that the Defendants were not entitled to qualified immunity as to the continued attack.

Defendants have made two arguments in their objection with respect to the continued attack of Defendant Glassner's canine.[3] They first argue that there was no Fourth Amendment violation. They contend that even if there is a factual dispute as to whether Plaintiff was bitten after he was handcuffed, they are still entitled to summary judgment. Defendants' second argument is that even if there was a Fourth Amendment violation with respect to the continued attack of

[3] While Defendants Englemann and Marion argue in the objection that they are entitled to summary judgment because they were not in a position to intervene, the Court will not consider this argument because Defendants Englemann and Marion did not raise it before the Magistrate Judge. *See* Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) ("A district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.")

The Court further rejects Defendant Grundy's objection that he is entitled to summary judgment because he was not in a position to intervene. Contrary to how Defendant Grundy characterizes the testimony, the Court does not read Plaintiff's deposition as acknowledging that Defendant Grundy was not in a position to intervene with respect to Defendant Glassner's dog. There is an issue of material fact as to whether Defendant Grundy had the ability to intervene and stop the continued attack but failed to do so.

Defendant Glassner's dog, they are entitled to qualified immunity. The Court rejects both arguments.

The Court first finds that Plaintiff has identified a constitutional violation in connection with the continued attack by Defendant Glassner's canine. An excessive force claim in connection with an arrest is analyzed "under the Fourth Amendment's objective reasonableness standard." Brosseau v. Haugen, 543 U.S. 194, 197, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004). The court must ask "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009). Under this framework, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Relevant factors in the reasonableness inquiry include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

While the first Graham factor weighs in Defendants' favor, the second and third do not. Taking the facts in the light most favorable to Plaintiff, there is no basis for believing Plaintiff posed any immediate threat to anyone's safety or was a flight risk. Once Plaintiff emerged from underneath the mobile home, he was in plain view of the officers, and as he was wrestling with Defendant Glassner's dog

and holding the dog's snout, it was presumably clear he had no weapons. There is no evidence to suggest that Plaintiff was exhibiting any forceful behavior towards the Defendants. At that time, Plaintiff was face down on the ground and "begging" the Defendants to get the dog off of him. It is also important to note that there were four police officers standing at the scuttle hole, all presumably armed, when Plaintiff and the dog emerged from underneath the mobile home. Plaintiff, surrounded by the officers, presumably did not pose a serious risk of harm to the officers, or a realistic risk of flight. Certainly there is a question as to whether Defendant Glassner's dog was called off or withdrawn as soon as reasonably possible. While Defendants fault Plaintiff for fighting with the dog rather than surrendering, the Court believes "that a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum," Kopf v. Wing, 942 F.2d 265, 268 (4th Cir. 1991), or in this case his head, side, arm, and shoulder.

Further, there is a material dispute in the evidence as to whether Defendant Glassner's dog continued to attack Plaintiff once he was handcuffed. If they determined that Plaintiff's version of events was the true version of events, a reasonable jury could conclude that Defendants used an unreasonable amount of force when they allowed Defendant Glassner's dog to bite Plaintiff after he was handcuffed and offering no resistance.

In addition, there is no clear evidence in the record as to how long the attack lasted. The jury will have to make a factual determination about how long

the attack lasted, and from there, the jury will have to decide whether the length of the attack was unreasonable.

As for Defendants' second argument, the Court agrees with the Magistrate Judge that Defendants are not entitled to qualified immunity. Plaintiff's right to be free from the force used by Defendant Glassner's canine in its continued attack was clearly established at the time of Plaintiff's arrest in 2011.

The Magistrate Judge's Recommendation (Doc. 44) is accepted and adopted. Defendants' objections are overruled. Defendant Grundy's Motion for Summary Judgment (Doc. 22) and Defendants Marion, Glassner, and Englemann's Motion for Summary Judgment (Doc. 29) are both granted in part and denied in part. Specifically, summary judgment is granted in Defendants' favor with respect to the release of Defendant Glassner's canine and with respect to the release of Defendant Marion's canine, but summary judgment is denied with respect to the continued attack of Defendant Glassner's canine.

This case is set down on the Court's trial calendar scheduled to begin on January 21, 2014 in Valdosta. Separate notice about the pretrial conference will be sent out in the near future.

**SO ORDERED**, this the 16th day of September, 2013.

***s/Hugh Lawson***
**HUGH LAWSON, SENIOR JUDGE**

mbh